**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

VERNELL CHARLES BING, SR., as father
and personal representative of the Estate
of his son, Vernell Charles Bing, Jr.,
deceased,

        Plaintiff,

vs.

        Case No. 3:16-cv-1140-J-34JRK

TYLER L. LANDREVILLE, Deputy Sheriff
Jacksonville Sheriff's Office, in his
individual capacity, et al.,

        Defendants.

_____/

# O R D E R

**THIS CAUSE** is before the Court on the Defendant City of Jacksonville's Motion to Dismiss (Doc. 28, Motion), filed on April 17, 2017.[1] In the Motion, the City of Jacksonville requests that the Court dismiss portions of plaintiff Vernell Charles Bing Sr.'s, Second Amended Complaint, (Doc. 25, SA Complaint), filed April 1, 2017. Vernell Bing, Sr. (Bing, Sr.), who files this action as the Personal Representative of the Estate of Vernell Charles Bing, Jr. (Bing, Jr.), opposes the Motion. See Plaintiff's Response in Opposition to Defendant Williams' Motion to Dismiss (Doc. 36, Response), filed June 7, 2017. Accordingly, this matter is ripe for review.

---

[1] In the Second Amended Complaint and Demand for Jury Trial (Doc. 25), Plaintiff sues Mike Williams, in his official capacity as Sheriff of the Consolidated City of Jacksonville and Duval County. A suit against a public official in his official capacity is treated as a suit against the local government entity he represents, in this case, the City of Jacksonville. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Owens v. Fulton County, 877 F.2d 947, 951 n.5 (11th Cir. 1989). As such, the City of Jacksonville filed the instant Motion. The Court will interchangeably refer to Williams, the Jacksonville Sheriff's Office (JSO), and the City of Jacksonville as circumstances require.

## I.    Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations

omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[2]

This  case  arises  out  of  an  encounter  between  Bing,  Jr.,  and  Officer  Tyler  L. Landreville (Landreville), during which Landreville shot Bing, Jr., resulting in Bing, Jr.'s, death.

On  the  early  evening  of  May  22,  2016,  Bing,  Jr.,  was  driving  a  red  Chevrolet Camaro convertible in Jacksonville, Florida.  SA Complaint at ¶ 16.  The car had been reported stolen in March of that same year, but there was no indication that Bing, Jr., was the individual who stole the vehicle.  Id.  At some point, Landreville observed Bing, Jr., driving the Camaro and attempted to stop him.  Id.  Bing did not stop and a brief pursuit followed, during which Landreville "intentionally rammed his patrol vehicle head-on" into Bing, Jr.'s, vehicle.  Id. at ¶ 17.  The pursuit covered approximately 3.7 miles and concluded with Landreville again "ramming into the vehicle driven by" Bing, Jr., id., causing Bing, Jr., to crash into the corner of a building.  Id.

> As a result of the crash, . . . Bing, Jr. was injured and subsequently pulled himself out of the driver's side of the vehicle and into the street.  Once . . . Bing, Jr. exited, he was limping away from the vehicle in the middle of the

---

[2] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the Plaintiff, and accept all reasonable inferences that can be drawn from such allegations.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts recited here are drawn from the SA Complaint, and may well differ from those that ultimately can be proved.

street away from . . . Landreville.  At this point in time, . . . Landreville drew his service weapon from his holster and began firing at unarmed and defenseless . . . Bing, Jr.  At no time was . . . Bing, Jr. ever armed with any type of weapon nor was . . . Bing, Jr. ever a threat to . . . Landreville.  Despite these facts, . . . Landreville began firing his service weapon at unarmed and defenseless . . . Bing, Jr.  . . . .  Bing, Jr., was immediately struck by a bullet from . . . Landreville's service weapon in the left side of his head, critically wounding him as he fell defenseless to the ground completely incapacitated.  Reports indicate . . . Landreville fired his service weapon at . . . Bing, Jr. more than once severely and critically wounding him.

Id. at ¶ 18.  Bing, Jr., was taken to the hospital, id. at ¶ 19, where staff later informed his family that he "had no brain function and would not recover from his critical head injuries."

Id. at ¶ 23.  The next day, the family made the difficult decision to withdraw life-support for Bing, Jr., and he died.  Id. at ¶ 24.

At the time of the encounter between Bing, Jr., and Landreville, Landreville was "employed as a member of the Jacksonville Sheriff's Office [JSO]" and was also on "reserve status with the United States Army as an active member of the Army Reserves." Id. at ¶ 27.  Defendant Sheriff Mike Williams (Williams) was the Sheriff of Jacksonville and in that capacity was responsible for the direction and oversight of the JSO.  Id. at ¶ 30.

As alleged in the SA Complaint, in the six years prior to the filing of this action "Jacksonville Sheriff's deputies [had] shot 54 people including 40 black citizens, killing 29."  Id. at ¶ 31.  Bing, Sr., includes various other statistics regarding the number of citizens shot by police in Jacksonville in a ten year period, and the seemingly small number of sheriff's deputies terminated for their involvement in a shooting.  Id.  Bing, Sr., further alleges that JSO "hires and employs multiple Sheriff's deputies who have had active and/or reserve military experience either during, before or after employment as a duly sworn law enforcement deputy employed by the [JSO]."  Id. at ¶ 32.  Landreville,

along with at least three other deputy sheriffs are "former military members who [have] been involved in police involved shootings with citizens of Jacksonville." Id. at ¶ 34. Bing, Sr., asserts his belief that the military training these men received served as a "foundation for their decisions, actions and reactions" in police/citizen encounters that resulted in police shootings and citizen deaths. Id. Likewise, Bing, Sr., contends that these officers did not receive any assimilation and re-training to help them transition from serving in a military capacity to serving in a domestic policing capacity. Id. at ¶ 33.

Based on these allegations, Bing, Sr., as the appointed Personal Representative of Bing, Jr.'s, estate, and as the natural parent of Bing, Jr., filed the instant action against Landreville, in his individual capacity, and Williams, in his official capacity as Sheriff of the Consolidated City of Jacksonville. Bing, Sr., asserts five claims in the SA Complaint.[3] In Count I, he asserts that Williams instituted a policy and custom permitting officers to use deadly force in violation of the Fourth and Fourteenth Amendments through his failure to instruct, supervise, control and/or discipline his officers. Id. at ¶ 31. In doing so, Bing, Sr., claims that Williams' failure to properly re-train and assimilate deputy sheriffs who "have had active and/or reserve military experience either during, before or after employment as a duly sworn law enforcement deputy employed by the [JSO]," id. at ¶ 32, also created a municipal custom, policy, and practice that "created a heightened increase in police involved shootings of citizens within the Jacksonville community by deputies who have had military training and experience." Id. As a result of Williams' actions, Bing, Sr.,

---

[3] In Counts II and V, Bing, Sr., brings a Florida wrongful death claim and a federal § 1983 excessive force claim, respectfully, against Landreville in his individual capacity. See SA Complaint ¶¶ 40-45 (Count II – Wrongful Death); id. at ¶¶ 60 – 65 (Count V – § 1983). Landreville has not sought to dismiss these claims, but rather, has filed an Answer. See Answer and Affirmative Defenses (Doc. 29, Answer), filed April 17, 2017. Therefore, Bing, Sr.'s, claims against Landreville are not before the Court at this time. Accordingly, and unless necessary for discussion of the claims against Williams and the City, the Court will not discuss Counts II and V.

claims that Williams caused his son's death, in violation of the United States Constitution and 42 U.S.C. § 1983. Id. at ¶¶ 37-38. Bing, Sr., also asserts that as a result of Williams' actions, Bing, Sr., "suffered mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing, and . . . Bing, [Sr.], will suffer the losses in the future, in violation of Bing, [Sr.'s] civil rights." Id. at ¶ 39.

In Count III, Bing, Sr., asserts a claim for wrongful death pursuant to Florida Statute sections 768.16-21, against Williams in his official capacity. Id. at ¶¶ 46-51. So doing, he seeks relief on behalf of Bing Jr.'s, estate, and himself, as a survivor of Bing, Jr. Id. at ¶¶ 11-12, 44. Finally, in Count IV, Bing, Sr., asserts a claim pursuant to 42 U.S.C. § 1983 of federal municipal liability against the City for Bing, Jr.'s, death.[4] As relief, Bing, Sr., seeks damages, attorney's fees, post-judgment interest, statutory and discretionary costs, any other relief the Court may deem appropriate, and a jury trial.[5]

## III. Arguments of the Parties

In the Motion, the City seeks to dismiss the federal § 1983 claim (Count I) and the Florida statutory wrongful death claim (Count III). As to the § 1983 claim in Count I, the City asserts that Bing, Sr., fails to allege that his son was deprived of a constitutional right, and even if he was, the SA Complaint fails to show that the JSO's customs, policies, or practices were the moving force that caused the constitutional deprivation. Motion at 6-12. Similarly, as to the Florida wrongful death claim in Count III, the City contends that Bing, Sr.'s, SA Complaint fails to state a claim upon which relief can be granted because

---

[4] In the Motion, the City notes that Counts I and IV duplicate and largely overlap one another. Motion at 6 n.8. In his Response, Bing, Sr., acknowledges as much, and "respectfully abandon[s] Count IV as duplicative of the issues raised in Count I" of the SA Complaint. Response at 5 n.3. As such, the Court will not devote any further discussion to Count IV, but rather focus solely on the remaining Counts I and III.

[5] The Court has jurisdiction over Bing, Sr.'s, § 1983 claims (Count I & IV) pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and exercises supplemental jurisdiction over his state law wrongful death claim (Count III). See 28 U.S.C. § 1367(a); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

Bing, Sr., does not sufficiently allege that Landreville used excessive force, thereby resulting in a "wrongful act," that caused Bing, Jr.'s, death, as required by Florida law. Id. at 12-13. In the alternative, the City contends that it is entitled to sovereign immunity pursuant to Florida Statute section 768.28(9)(a), given that in the SA Complaint Bing, Sr., asserts that Bing, Jr., was "brutally and maliciously killed by . . . Landreville." Id. at 13-14.

In response, Bing, Sr., argues as to Count I that "[t]aking all well-pled allegations as true, the four-corners of [Bing, Sr.'s, SA Complaint] shows [sic] a clear constitutional violation alleged . . . ." Response at 5. Moreover, he asserts that his SA Complaint also sufficiently alleges that it was the JSO's policies, customs, and practices that were the moving force that caused Landreville's unconstitutional deprivation of Bing, Jr.'s, life. Id. at 12-19. Accordingly, he claims the Court should not dismiss Count I. As to Count III, Bing, Sr., argues that his SA Complaint does sufficiently allege that Landreville used excessive force in killing his son, and hence his wrongful death claim should not be dismissed. Id. at 19-20.

## IV. Discussion

### a. Count I – § 1983 Custom, Policy and Practice Claim

In Count I, Bing, Sr., claims that Williams, in his official capacity as Sheriff for the City of Jacksonville, established policies that ultimately caused Bing, Jr.'s, death.[6] Subsumed within this claim are three separate arguments. First, Bing, Sr., asserts that Williams instituted a policy, custom, and practice in the JSO permitting officers to use

---

[6] As previously noted, by asserting this claim against Williams in his official capacity as Sheriff, Bing, Sr., is essentially bringing a suit against the City of Jacksonville. See Graham, 473 U.S. at 165-66; Owens, 877 F.2d at 951 n.5.

excessive and unlawful deadly force. Second, Bing, Sr., proffers that Williams failed to properly instruct, train, supervise, control, or discipline officers who used unlawful deadly force. Finally, Bing, Sr., claims that Williams failed to re-train and assimilate officers "who have had active and/or reserve military experience either during, before or after employment as a duly sworn law enforcement deputy employed by the [JSO]." Id. at ¶ 32. In this context, Bing, Sr., also suggests that Williams effectively ratified Landreville's allegedly unlawful and unconstitutional actions. Id. at ¶ 36.

The Supreme Court of the United States has soundly rejected the theory of respondeat superior as a basis for liability in § 1983 actions. See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Instead, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 693-94. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'

by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting

Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986)).  A municipality will rarely have an

officially-adopted policy that permits a particular constitutional violation, therefore, in order

to state a cause of action for damages under § 1983, most plaintiffs must demonstrate

that the municipality has a custom or practice of permitting the violation.  See Grech, 335

F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  The Eleventh

Circuit has defined "custom" as "a practice that is so settled and permanent that it takes

on the force of law" or a "persistent and wide-spread practice."  Sewell, 117 F.3d at 489.

Similarly, in some circumstances, "the failure to provide proper training may fairly

be said to represent a policy for which [the county] may be held liable if it actually causes

injury."  City of Canton, 489 U.S. at 390.  Failure to train can lead to municipal liability

"only where a municipality's failure to train its employees in a relevant respect evidences

a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can

be properly thought of as a city 'policy or custom' that is actionable under § 1983."  Id. at

388-89 (alteration added).  Thus, in order to assert such a claim, a plaintiff must "present

some evidence that the municipality knew of a need to train and/or supervise in a

particular area and the municipality made a deliberate choice not to take any action."

Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  The Eleventh Circuit has

repeatedly held that "without notice of a need to train or supervise in a particular area, a

municipality is not liable as a matter of law for any failure to train or supervise."  Id. at

1351.    Indeed, "the need for such training must be plainly obvious to [City]

decisionmakers," such as where there is "evidence of a history of widespread prior

abuse."  Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (alteration added); see

also Rocker v. City of Ocala, Fla., 355 Fed. Appx. 312, 314 (11th Cir. 2009) (per curiam) (unpublished). [7]

Finally, a municipality may be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)).  In this context, the "final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." Matthews, 294 F.3d at 1297-98 (internal quotations and citations omitted).  As implicated in this case, the Eleventh Circuit has also suggested that a City's "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct, thereby establishing a 'custom' within the meaning of Monell." Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985); see also Rivas v. Figueroa, No. 11–23195–Civ., 2012 WL 1378161, *3 (S.D. Fla. Apr. 20, 2012) ("A municipality may be liable for violating Section 1983 even where the municipality provides rules and regulations for the operation of its police department, if those rules were repeatedly violated and the municipality failed to rectify the situation") (citing Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir.1986)).

Although the City argues that the § 1983 claim in Count I should be dismissed because Bing, Sr., fails to allege a constitutional violation, the Court need not decide this issue, because even if he has, the SA Complaint fails to sufficiently allege that the City's

---

[7] In citing to Rocker, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally FED. R. APP. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

policies, practices, and customs, or Williams' failure to train his deputies, caused Bing, Jr.'s, death.  See e.g., Yates v. Cobb County Sch. Dist., 687 Fed. Appx. 866, 873 (11th Cir. 2017) (assuming, without deciding, the existence of a constitutional violation but determining that plaintiff had failed to sufficiently allege policy and custom); Thomas v. Derryberry, No. 8:16-cv-3482-T-33AEP, 2017 WL 2267977, *3 (M.D. Fla. May 24, 2017) (same);  Belizaire v. City of Miami, No. 12-23327-Civ., 2013 WL 5780396, *8 (S.D. Fla. Oct. 25, 2013) (same); Mersch v. City of Coral Springs, No. 10-60359-CIV-MOORE/SIMONTON, 2010 WL 11507131, *5 (S.D. Fla. Sept. 21, 2010) (same).

As referenced above, in order to sufficiently allege a municipal policy and custom, the plaintiff must assert facts that show a persistent and widespread practice of permitting a constitutional violation.  See Grech, 335 F.3d at 1330; McDowell, 392 F.3d at 1289; Sewell, 117 F.3d at 489.  Similarly, in the context of raising a failure to train claim, the plaintiff must show that official decision makers were deliberately indifferent to the need for training and discipline.  See City of Canton, 489 U.S. at 390; Wright, 919 F.2d at 674; Rocker, 2009 WL 4365226 at *2.  Notably, the Supreme Court, in dictum, has left open the possibility that in some instances "a need to train could be 'so obvious,'" that a city could be held liable even without a pattern of prior constitutional violations.  See Gold, 151 F.3d at 1352 (citing City of Canton, 489 U.S. at 390).  As an example, the Supreme Court pointed to need to train officers in the use of deadly force where the officers are provided firearms.  City of Canton, 489 U.S. at 390 n.10.

Upon review of the SA Complaint, the Court is not persuaded that Bing, Sr., has sufficiently alleged that the City has established a policy of permitting officers to unreasonably use deadly force.  In his SA Complaint, Bing, Sr., asserts that

> [i]n the last six years, Jacksonville Sheriff's deputies have shot 54 people including 40 black citizens, killing 29. According to a [local newspaper database], in the last ten years, 124 people have been shot by police in Jacksonville, Florida. Ninety-six (96) of them or 76% were black. Black citizens make up about 30% of Jacksonville's population. Only two (2) deputies have been fired as a result of the 124 shootings. Two (2) more resigned under the threat of termination. For twenty-five (25) of the deputies who shot people in the last ten years, it was not their first time firing at a citizen. According to a Wall Street Journal analysis, the [JSO] ranked ninth (9th) in the country for total number of fatal police shootings between 2007 and 2012.

Id. at ¶ 31. Bing, Sr., alleges that these numbers and statistics "serve to re-inforce" that the City has a policy and custom of permitting deputy sheriffs to use unlawful deadly force against citizens. SA Complaint at ¶ 31. The Court disagrees.

Rather than re-inforce an already established proposition, the numbers and statistics Bing, Sr., cites represent a flawed attempt to lay the foundation for his custom and policy claim. The numbers and statistics cited by Bing, Sr., reflect the race of individuals shot by the police, the overall number of police shootings in the City of Jacksonville, and how some officers have been disciplined following a shooting incident. Id. at ¶ 31. However, that is all they do. Critically, they do not indicate whether the reported shootings were unjustified, or represented the unlawful or excessive use of deadly force. The number of police shootings, even combined with the race of the victims, without more is insufficient to raise a plausible claim that any, much less a significant number of the shootings, involved unlawful or excessive force. Moreover, Bing, Sr.'s, own recitation reflects that at least on four instances, deputies who shot citizens were disciplined or resigned "under the threat of termination." Id. As such, while the statistics detailed in the SA Complaint provide a general snapshot of police shooting activity in Jacksonville, they do not support an allegation that the City has a widespread practice

and policy of permitting officers to use unreasonable deadly force when encountering citizens. See e.g., Pineda v. City of Houston, 291 F.3d 325, 329 (5th Cir. 2002) (eleven reports of warrantless entries into homes did not create an issue of fact as to the existence of a policy and practice of unconstitutional searches); Brooks v. D.R. Scheib, 813 F.2d 1191, 1193-94 (11th Cir. 1987) (mere citizen reports of police misconduct, without verification that the reports had merit, were insufficient to establish a municipal policy and practice of widespread police misconduct); Tucker v. Bradshaw, No. 11-80058-CIV-RYSKAMP/VITUNAC, 2012 WL 13018687, *3 (S.D. Fla. Jan. 19, 2012) (municipal liability claim undermined where complaint failed to allege that prior complaints of police misconduct were similar to behavior alleged in current case, or were substantiated to be valid complaints); Btesh v. City of Maitland, No. 6:10-cv-71-Orl-19DAB, 2011 WL 3269647, *30-31 (M.D. Fla. July 29, 2011) (court unwilling to find city had pattern and practice of police use of deadly force where 48 prior reports of deadly force were eventually deemed justified).

Similarly, Bing, Sr., has failed to allege sufficient facts to support the failure to train prong of his § 1983 claim. Notably, the allegations in the SA Complaint are conclusory at best. At most, Bing, Sr., asserts that Williams "failed to instruct, supervise, control and/or discipline, on a continuing basis its agents, servants, and employees, so as to prevent the use of excessive deadly force." SA Complaint at ¶ 31. In doing so, he relies again on the statistics to show that Williams was deliberately indifferent in failing to train his officers in the use of deadly force. While the numbers and statistics reflect that there have been police shootings in Jacksonville, nothing in Bing, Sr.'s, statistics suggests that those shootings were the result of the unlawful use of deadly force, or were the result of

insufficient training or the absence of training on the use of deadly force. See e.g., Brooks, 813 F.2d at 1193-94; Tucker, 2012 WL 13018687 at *3; Btesh, 2011 WL 3269647 at *32-33. Compare Danley v. Allen, 540 F.3d 1298, 1315 (11th Cir. 2008) (numerous known incidents of unconstitutional conduct of defendant jailors that bore sufficient similarity to charges in instant case warranted court finding that supervisor had knowledge of widespread abuse), abrogated on other grounds as recognized by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); J.W. v. Birmingham Bd. of Educ., 143 F. Supp. 3d 1118, 1168-73 (N.D. Ala. 2015) (deliberate indifference established where supervising officer knew of, and permitted, officers to engage in behavior that deviated from stated policies). Here, Bing, Sr., has presented the Court only with conclusory and speculative allegations supported by "facts" that fail to support his underlying premise. As the Supreme Court has stated, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Bing, Sr.'s, failure to train claim, lacking in factual support, cannot proceed.

Finally, Bing, Sr. also fails to allege sufficient facts to support his argument that Williams was deliberately indifferent in his failure to re-train and assimilate deputy sheriffs "who have had active and/or reserve military experience either during, before or after employment as a duly sworn law enforcement deputy employed by the [JSO]," or that his alleged failure to discipline officers who have used excessive deadly force amounts to ratification. SA Complaint at ¶ 32, 36. To adequately plead such a claim, Bing, Sr., must allege facts supporting a plausible conclusion that Williams' failure to train or assimilate

officers who had military backgrounds was borne out of a deliberate indifference to a widespread history of prior abuse. City of Canton, 489 U.S. at 388-89; Wright, 919 F.2d at 674; Rocker, 2009 WL 4365226 at *2. He has failed to do so.

In the SA Complaint, Bing, Sr., asserts that

[t]he [JSO] has ignored the relationship between military training and experience and active policing and how it impacts police involved shootings by these deputies who have returned to law enforcement service after serving in a military capacity. There is no policy and/or practice and custom in place within the [JSO] to retrain and/or re-assimilate these sworn deputies despite there being a need for such retraining and assimilation.

SA Complaint at ¶ 33. To support his allegation of the "need for such retraining and assimilation," id., Bing, Sr., names three other officers, along with Landreville, who have military backgrounds and have been "involved in police involved shootings with citizens." SA Complaint at ¶ 34. He further asserts that

[t]here are a number of police involved shootings by JSO deputies who were former and/or active military members whose military training had been a foundation for their decisions, actions and reactions to police involved shootings that have resulted in the shootings and/or the shooting deaths at the hands of law enforcement deputies within the [JSO].

Id. These allegations suffer from the same defects as did Bing, Sr.'s, allegations supporting his policy and custom, and failure to train arguments.

First, Bing, Sr.'s, reference to three or four alleged instances in which an officer with some form of military background was involved in a police shooting does not rise to the level of representing a widespread history of prior abuse. See e.g., Hays v. Curry, No. 2:16-cv-00384-RDP, 2016 WL 6395429, *3 (N.D. Ala. Oct. 28, 2016); Burnette v. Ciolino, 750 F. Supp. 1562, 1564-65 (M.D. Fla. 1990); Prieto v. Metro. Dade County, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989). Second, the bare facts he asserts in regard to police shootings by officers with military backgrounds do not support an inference that

those shooting incidents were in any way unjustified or an unlawful use of deadly force, much less that the officers' military background played any role of the use of force.  See e.g., Pineda, 291 F.3d at 329; Brooks, 813 F.2d at 1193-94; Tucker, 2012 WL 13018687 at *3; Btesh, 2011 WL 3269647 at *30-31.  Finally, Bing, Sr.'s, allegations as to Williams' failure to re-train and assimilate officers with a military background are nothing more than speculative and conclusory statements lacking any factual foundation.  He asserts that the JSO has "ignored the relationship between military training and active policing," id. at ¶ 33, and that officers with military backgrounds who were involved in shooting incidents relied on their "military training . . .  [as] a foundation for their decisions, actions and reactions."  Id. at ¶ 34.  However, he provides nothing to support these broad, speculative and conclusory allegations.[8]  Applying the pleading standards required by Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 555, the Court concludes that Bing, Sr., has failed to sufficiently allege facts to support the failure to re-train and assimilate military officers component of his § 1983 claim against the City and Williams.

For the foregoing reasons, the Court concludes that each of Bing, Sr.'s, theories asserted in support of his § 1983 claim against Williams fails.  Therefore, Count I is due to be dismissed.

---

[8] It is in this context that Bring, Sr., obliquely suggests that Williams ratified Landreville's conduct.  See SA Complaint at ¶ 36 (". . . Williams directly or indirectly, under color of law, approved or ratified the unlawful and deliberately indifferent conduct heretofore described and took no action in an effort to identify, properly train and re-assimilate military personnel back into policing activity within the [JSO].").  However, Bing, Sr.'s, SA Complaint does not provide the Court with any allegations supporting the assertion that the City persistently failed to take disciplinary action against officers so as to establish a custom or policy of failing to re-train and assimilate deputy sheriff's with military experience.  See Fundiller, 777 F.2d at 1443; Rivas, 2012 WL 1378161 at *3.

### b.  Count III – Florida Wrongful Death Claim

In Count III, Bing, Sr., asserts a wrongful death claim pursuant to Florida Statute sections 768.16-21, against Williams in his official capacity, based upon the negligent or wrongful acts or omissions of Landreville.  SA Complaint at ¶ 50-51.[9]  In the Motion, the City asserts that the facts laid out in the SA Complaint fail to sufficiently allege that Landreville engaged in a "wrongful act."  Motion at 13.  Alternatively, the City asserts that Bing, Sr.'s, claim against Williams, and by extension, the City, is barred by sovereign immunity.  Id. at 13-14.  In response, Bing, Sr., reasserts his contention that he has sufficiently pled facts to support this claim.  Response at 18-19.

Unlike municipal liability claims under § 1983, under Florida law, a municipality can be vicariously liable for the tortious acts of its employees.  See Young v. Borders, No. 5:13-cv-113-Oc-22PRL, 2014 WL 11444072, *21 (M.D. Fla. Sept. 18, 2014); Saballos v. Bonilla, No. 05-21928-CIV, 2006 WL 3940552, *8 (S.D. Fla. Dec. 5, 2006).  Indeed, Florida's statutory waiver of sovereign immunity, codified in Florida Statute section 768.28 states

> [t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions . . . shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . .

FLA. STAT. § 768.28(9)(a); see also Searer v. Wells, 837 F. Supp. 1198, 1201 (M.D. Fla. 1993).[10]  However, section 768.28(9)(a) also provides that individual officers can

---

[9]As with Count I, because Bing, Sr., has brought this claim against Williams in his official capacity as Sheriff, his claim is properly framed as one against the City of Jacksonville.  See Graham, 473 U.S. at 165-66; Owens, 877 F.2d at 951 n.5.

[10] A city, as well as its associated units, such as a sheriff's office, falls under the ambit of section 768.28(9)(a).  See e.g., Shehada v. Tavss, 965 F. Supp. 1358, 1375 (S.D. Fla. 2013) (noting municipalities are governed by FLA. STAT. § 768.28); Battiste v. Lamberti, 571 F. Supp. 2d 1286, 1305-06 (S.D. Fla. 2008) (FLA. STAT. § 768.28 applies to Sheriff).

nonetheless be subject to suit where the officer acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property," FLA. STAT. § 768.28(9)(a), but under those circumstances the municipality is shielded from liability. Id.; see also e.g., Gregory v. Miami-Dade County, No. 16-17093, 2017 WL 5483158, *12 (11th Cir. Nov. 15, 2017); Desai v. Farmer, No. 5:12-cv-495-Oc-34PRL, 2014 WL 5474417, *9 (M.D. Fla. Oct. 29, 2014); Hargis v. City of Orlando, No. 6:12-cv-723-Orl-37KRS, 2012 WL 6089715, *6 n.12 (M.D. Fla. Dec. 7, 2012); Petithomme v. County of Miami Dade, No. 11-20525-CIV, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011); Ramos v. City of Jacksonville, No. 3:07-cv-37-J-12TEM, 2007 WL 2310783, *4 (M.D. Fla. Aug. 9, 2007); Burks v. Beary, 713 F. Supp. 2d 1350, 1360-61 (M.D. Fla. 2010); Searer, 837 F. Supp. at 1202. Thus, where an officer, in the course of his or her employment with the municipality, engages in a wrongful act but does not do so maliciously or in bad faith, the municipality is the party to be held responsible. See e.g., Gregory, 2017 WL 5483158 at *12; Desai, 2014 WL 5474417 at *9; Hargis, 2012 WL 6089715 at *6 n.12; Petithomme, 2011 WL 3648622 at *3 n.2; Peguero v. Delaurentos, No. 11-20069-CIV-JORDAN, 2011 WL 13223704, *1 (S.D. Fla. May 12, 2011); Burks, 713 F. Supp. 2d at 1360-61. In other words, under Florida law, a party can only succeed in an excessive force claim against an individual officer, or the government entity who employed that officer, but not both. See Ullman v. Fla. Dep't of Corr., No. 5:17-cv-66-Oc-30PRL, 2017 WL 2103392, *2 (M.D. Fla. May 15, 2017) (citing McGhee v. Volusia County, 679 So. 2d 729, 733 (Fla. 1996)); Desai, 2014 WL 5474417 at *9; Hargis, 2012 WL 6089715 at *6 n.12.

While Florida sovereign immunity law precludes a plaintiff from recovering concurrently from both the municipality and the employee for a wrongful death claim, <u>see</u> FLA. STAT. § 768.28(9)(a), the federal pleading rules permit a plaintiff, in initiating his or her action, to plead in the alternative against both the municipality and the officer. <u>See</u> FED. RULE CIV. PRO. 8(d) (Federal Rule(s)) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.") Here, Bing, Sr., did just that.

In his claim for wrongful death against the City, he asserted that

> Williams, in his official capacity, is liable for the death caused by the negligent or wrongful acts or omissions of any employee of the [JSO] while acting within the scope of their employment.
> . . . Deputy Landreville was at all relevant times an employee of the [JSO] and was acting within the scope of his employment during the time of the incident.

SA Complaint at ¶ 50-51. Conversely, in his wrongful death claim against Landreville, Bing, Sr., alleged that "Landreville's actions [were] either in bad faith, with malicious purpose, or in a manner exhibiting a willful disregard of human rights . . . ." <u>Id.</u> at ¶ 43.[11] Ultimately, as the facts are further developed by the parties, only one of these claims can potentially prevail. However, at this stage of the proceedings, Bing, Sr.'s, alternative pleading is entirely permissible. <u>See</u> <u>e.g.</u>, <u>Gregory</u>, 2017 WL 5483158 at *12; <u>Bickel v. City of Coral Springs</u>, No. 17-cv-60606, 2017 WL 2439078 at *4 (S.D. Fla. June 6, 2017); <u>Ullman</u>, 2017 WL 2103392 at *2; <u>Claridy v. City of Lake City</u>, No. 3:13-cv-558-J-39PDB,

---

[11] The Court also notes that Bing, Sr., makes clear that he is pleading in the alternative. <u>See</u> SA Complaint at ¶ 43 (". . . or as set forth in the next Count of the complaint alternatively, the actions were done in the course and scope of [Landreville's] employment with the [JSO] making the Sheriff in his official capacity alternatively liable for the actions of . . . Landreville.").

2014 WL 12656531, *2 n.2 (M.D. Fla. Feb. 11, 2014); Hargis, 2012 WL 6089715 at *6 n.12; Petithomme, 2011 WL 3648622 at *3 n.2; Ashley v. City of Hialeah, No. 11-20490-CIV, 2011 WL 3236051, *3 (S.D. Fla. July 28, 2011); Peguero, 2011 WL 13223704 at *1; Hair v. Lawnwood Med. Ctr., Inc., No. 08-14128-CIV, 2008 WL 2690793 at *1 (S.D. Fla. July 2, 2008); Searer, 837 F. Supp. at 1202.

The City argues that because Bing, Sr., asserted in his SA Complaint that Landreville "brutally and maliciously killed" Bing Jr., SA Complaint at ¶ 38, Bing Sr. has plead facts showing Landreville's bad faith, and therefore, pursuant to Florida Statute section 768.28(9)(a), the City is immune from suit. See Motion at 13-14. In making this argument the City acknowledges that Bing, Sr. did not incorporate the allegations set forth in paragraph 38 into the wrongful death claim in Count III against the City. See Motion at 13 n.11. However, the City nonetheless notes that paragraph 48 of the SA Complaint, which is a part of Count III, reads "[a]s a direct and proximate result of the conduct of . . . Landreville, as set forth above, . . . Bing, Jr., died . . . ." Motion at 13, n.11 (emphasis added by Defendant). From this, the City suggests that in Count III, Bing, Sr., has alleged that Landreville acted in bad faith or with malicious intent when he shot Bing, Jr., therefore precluding the City from liability. The City's argument goes too far.

Certainly, paragraph 48 of Bing, Sr.'s, SA Complaint does reference Landreville's actions "as set forth above," when asserting under Count III that the City should be liable under Florida's wrongful death statute for Bing, Jr.'s, death. SA Complaint at ¶ 48. What the City fails to acknowledge, however, is that in the first paragraph of Count III, Bing, Sr., expressly re-alleges and incorporates by reference the first 27 paragraphs of his SA Complaint, id. at ¶ 46, but does not incorporate paragraph 38, the paragraph that contains

the "brutally and maliciously killed" language.  <u>Id.</u> at ¶ 38.  Moreover, there is nothing in paragraphs 1 – 27 of the SA complaint that describes Landreville's intent or mental state when he allegedly shot Bing, Jr.  Finally, the "brutally and maliciously" language the City relies upon to attempt to shield itself from liability, is language drawn from Count I of Bing, Sr.,'s SA Complaint, which asserts a federal § 1983 municipal liability claim against the City for Landreville's actions, rather than a state tort claim.  Accordingly, the Court rejects the City's argument that Count III should be dismissed because Bing, Sr., pled that Landreville acted "brutally and maliciously," and therefore the City is immune from suit pursuant to section 768.28(9)(a).  Bing, Sr., is permitted under the alternative pleading rules to plead both that Landreville may be liable for malicious behavior, and in the alternative, that the City is liable for Landreville's actions if he acted in wrongfully committing an intentional tort.  <u>See</u> <u>e.g.</u>, <u>Gregory</u>, 2017 WL 5483158 at *12; <u>Bickel</u>, 2017 WL 2439078 at *4; <u>Ullman</u>, 2017 WL 2103392 at *2 n.2; <u>Claridy</u>, 2014 WL 12656531 at *2; <u>Hargis</u>, 2012 WL 6089715 at *6 n.12; <u>Petithomme</u>, 2011 WL 3648622 at *3 n.2; <u>Ashley</u>, 2011 WL 3236051 at *3; <u>Peguero</u>, 2011 WL 13223704 at *1; <u>Hair</u>, 2008 WL 2690793 at *1; <u>Searer</u>, 837 F. Supp. at 1202.

Turning to the merits of Count III, the City contends that Bing, Sr., has not sufficiently alleged that Landreville acted wrongfully by using excessive force in shooting Bing, Jr.  In evaluating whether an officer's use of force is excessive, courts examine whether the officer's actions were reasonable under the circumstances.  <u>See</u> <u>Sullivan v. City of Pembroke Pines</u>, 161 Fed. Appx. 906, 911 (11th Cir. 2006); <u>Vaughn v. City of Orlando</u>, No. 6:07-cv-1695-Orl-19GJK, 2009 WL 3241801, *8 (M.D. Fla. Sept. 29, 2009) (<u>aff'd</u> 413 Fed. Appx. 175, 178-79 (11th Cir. 2011)); <u>City of Miami v. Sanders</u>, 672 So. 2d

46, 46 (Fla. 3d Dist. Ct. App. 1996). Notably, Florida Statutes section 776.05 provides that an officer is justified in using any force, even deadly force, which he reasonably believes to be necessary. See FLA. STAT. § 776.05. However, the statute specifically states that it will not constitute a defense for the wrongful use of deadly force unless

> the use of deadly force was necessary to prevent [an] arrest from being defeated by . . . flight, and when feasible, some warning had been given, and; [t]he officer reasonably believes that the fleeing felon poses a threat of death or serious physical harm to the officer or others; or [t]he officer reasonably believes that the fleeing felon has committed a crime involving the infliction or threatened infliction of serious harm to another person.

FLA. STAT. § 776.05(3).

In his SA Complaint, and as specifically incorporated into Count III, Bing, Sr., asserts that Landreville engaged in a vehicular pursuit of Bing, Jr., and caused him to crash into a building. SA Complaint at ¶ 17.

> As a result of the crash, . . . Bing, Jr. was injured and subsequently pulled himself out of the driver's side of the vehicle and into the street. Once . . . Bing, Jr. exited, he was limping away from the vehicle in the middle of the street away from . . . Landreville. At this point in time, . . . Landreville drew his service weapon from his holster and began firing at unarmed and defenseless . . . Bing, Jr. At no time was . . . Bing, Jr. ever armed with any type of weapon nor was . . . Bing, Jr. ever a threat to . . . Landreville. Despite these facts, . . . Landreville began firing his service weapon at unarmed and defenseless . . . Bing, Jr. . . . . Bing, Jr., was immediately struck by a bullet from . . . Landreville's service weapon in the left side of his head, critically wounding him as he fell defenseless to the ground completely incapacitated. Reports indicate . . . Landreville fired his service weapon at . . . Bing, Jr. more than once severely and critically wounding him.

Id. at ¶ 18. Bing, Jr., ultimately died from his wounds. Id. at ¶ 24.

In reviewing these factual assertions, and drawing all reasonable inferences in favor of Bing, Sr., see Randall, 610 F.3d 705, the Court must determine if the factual assertions plausibly allege that Landreville engaged in a wrongful act, and more specifically, that he used excessive force in shooting Bing, Jr. So doing, the Court

concludes that the SA Complaint states a claim, plausible on its face, that Landreville used excessive force when he shot Bing, Jr.

As noted earlier, Florida law provides that an officer may be liable for the use of deadly force unless

> the use of deadly force was necessary to prevent [an] arrest from being defeated by . . . flight, and when feasible, some warning had been given, and; [t]he officer reasonably believes that the fleeing felon poses a threat of death or serious physical harm to the officer or others; or [t]he officer reasonably believes that the fleeing felon has committed a crime involving the infliction or threatened infliction of serious harm to another person.

FLA. STAT. § 776.05(3). Based on the facts alleged in the SA Complaint, a jury could conclude that Landreville's use of deadly force in shooting Bing, Jr., exceeded the bounds of reasonableness. See e.g., Gregory, 2017 WL 5483158 at *6, *13; Salvato v. Blair, No. 5:12-cv-635-Oc-10PRL, 2014 WL 1899011, *8, *9, *17 (M.D. Fla. May 12, 2014); Peguero, 2011 WL 13223704 at *2; Saballos, 2006 WL 3940552 at *7-8. According to the allegations of Bing, Sr.'s, SA Complaint, at the time Landreville shot Bing, Jr., Bing, Jr., was unarmed, defenseless, and at no time posed a threat of any kind much less a "threat of death or serious physical harm to the officer or others." FLA. STAT. § 776.05(3). While Bing, Jr., was driving a vehicle that had been reported stolen, he was not alleged to be the person who stole the vehicle. Moreover, nothing in the SA Complaint suggests that Landreville believed Bing, Jr. had "committed a crime involving the infliction or threatened infliction of serious harm to another person." Id. Similarly, at the time Landreville shot Bing, Jr., he was limping away from the officer after having suffered from a car crash. While Landreville may have shot Bing, Jr., to prevent his escape, that is not alleged in the SA Complaint, and drawing that inference, which would favor Landreville rather than Bing, Sr., is not permissible at the motion to dismiss stage of the proceeding.

Finally, there are no facts to suggest that Landreville issued a warning to Bing, Jr., prior to shooting him.  See Fla. Stat. § 776.05(3).  Accordingly, the Court determines that Bing, Sr., has stated a plausible claim that Landreville used excessive force when he shot Bing, Jr.

Finally, Bing, Sr., asserts in his SA Complaint that

[p]ursuant to § 768.28, . . . Williams, in his official capacity, is liable for the death caused by the negligent or wrongful acts or omissions of any employee of the [JSO] while acting within the scope of their employment.
Deputy Landreville was at all relevant times an employee of the [JSO] and was acting within the scope of his employment during the time of the incident.

SA Complaint at ¶ 50-51.  The City does not challenge Bing, Sr.'s, basic proposition that pursuant to Florida Statutes section 768.28, Williams can be held vicariously liable for Landreville's actions.  Nor does the City challenge Bing, Sr.'s, assertion that Landreville was a JSO employee "acting within the scope of his employment during the time of the incident."  SA Complaint at ¶ 51.  Taken as a whole, therefore, Bing, Sr., has sufficiently alleged that Williams, in his official capacity as Sheriff of the City of Jacksonville, can be held liable for Landreville's use of force in shooting Bing, Jr., which resulted in Bing, Jr.'s, wrongful death.

For these reasons, the Court finds that Count III against Mike Williams, in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida, is not due to be dismissed.

In light of the foregoing, it is

**ORDERED**:

Defendant City of Jacksonville, and Mike Williams, in his official capacity as Sheriff of the Jacksonville Sheriff's Office's, Motion to Dismiss (Doc. 28), is **GRANTED in part and DENIED in part.**

1. The Motion to Dismiss is granted to the extent that Counts I and IV are **DISMISSED with prejudice**.

2. In all other respects, the Motion to Dismiss is **DENIED**.

    **DONE AND ORDERED** at Jacksonville, Florida on March 1, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc26
Copies to:

Counsel of Record